UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RODNEY BROWN,

                                     Plaintiff,

    vs.                                                               9:08-CV-085 (TJM/ATB)

A. SECORE and LT. GUERIN,

                                     Defendants.

_____

RODNEY BROWN, Plaintiff pro se
JAMES SEAMAN, AAG, Attorney for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge.

In this amended civil rights complaint, plaintiff alleges that, while he was an inmate in the custody of the Franklin Correctional Facility (Franklin), Correctional Officer Secore filed an unfounded inmate misbehavior report, charging Brown with possession of "contraband"–an open cup of cleaning solution. (Dkt. No. 10.)  Plaintiff also alleges that hearing officer Lt. Guerin denied him due process by finding Brown guilty of the disciplinary charges after a hearing.  Plaintiff seeks unspecified monetary damages to compensate him for the time he spent in the special housing unit at Franklin as a result of the defendants' disciplinary action against him.

Presently before this court is the defendants' motion for summary judgment,

pursuant to Fed. R. Civ. P. 56. (Dkt. No. 41.) Plaintiff filed an unsigned "Affirmation" in opposition to the motion which did not comply, in various ways, with Local Rule 7.1(a). (Dkt. No. 42.) For the following reasons, this court recommends that the defendant's motion for summary judgment be granted and the amended complaint be dismissed.

## DISCUSSION

### I. Facts

Plaintiff alleges that, on the morning of Monday, December 17, 2007, while serving a 30-day term in the special housing unit ("SHU") at Franklin for unrelated misconduct, he asked a passing correctional officer for supplies to clean his sink and toilet. Brown states that an unidentified officer gave him an open cup of cleaning solution. (Amended Complaint (AC) at 3; Plaintiff's Deposition (Depo.) at 21-24, Dkt. No. 41-2.) Plaintiff started to clean his toilet, but claims that within five minutes or less, he was taken from his cell to attend a disciplinary hearing on the unrelated charges. (Depo. at 10, 35-37.) At approximately 8:30 a.m., Correctional Officer Secore "frisked" plaintiff's "cube" and found an open cup of cleaning solution near the sink.[1]

---

[1] During his deposition, Plaintiff estimated that he asked for the cleaning supplies "approximately between 8:10 and 8:30." (Depo. at 24.) Shortly thereafter, plaintiff testified that he asked for the soap "give or take five minutes after 8. Five minutes no more than 5 to 10 minutes, between 7:55 and 8:10 maximum." *Id.* at 26. The SHU log for December 17th, as well as a contraband receipt and inmate misbehavior report prepared by Officer Secore noted that inmate Brown was taken out to his disciplinary hearing at 8:30 a.m., and that his "cube" was searched at approximately 8:30. (Secore Decl. Ex. A, Dkt. No. 41-15; Exs. 2 & 3 to Plaintiff's Deposition, Dkt. Nos. 41-4 & 41-5). In their Statement Pursuant to Rule 7.1(a)(3) (Dkt. No. 41-16 ¶ 9) and Memorandum of Law (Dkt. No. 41-17 at 3), defendants argue that the record

2

According to defendant Secore, both the soap and the cup could be considered prohibited "contraband." Every Saturday, inmates in the SHU are required to clean their cubes and are provided cleaning supplies, including soap in spray bottles– "never" in open cups. (Secore Decl. ¶¶ 6-7, Dkt. No. 41-14). Inmates are not allowed to keep the cleaning supplies after they clean their cubes because they could be used as weapons. Cleaning solution had been thrown by inmates in the past. Inmates are also not allowed to keep open containers because they can be used to throw substances, such as urine, at others. (Secore Decl. ¶¶ 9-10). Defendant Secore seized the cup of cleaning solution, left a contraband receipt for the plaintiff, and eventually prepared an inmate misbehavior report, charging Brown with possessing the "contraband" cleaning solution. (Secore Decl. ¶¶ 13-16; Exs. 2 & 3 to Plaintiff's Deposition, Dkt. Nos. 41-4 & 41-5.)

On December 21, 2007, defendant Guerin conducted a Tier II disciplinary hearing[2] on the contraband charges against the plaintiff, who acknowledged prior notice of the misbehavior report. (Depo. Ex. 5, Disciplinary Hearing Transcript

---

establishes that the plaintiff had 20 minutes to clean his sink and toilet–between the time he was given the soap by the unknown Correctional Officer (at 8:10) and the time he was taken from his cell (at 8:30). While plaintiff was erratic with his estimates of the time of events on the morning of December 17th, he was more consistent in stating that, in the five minutes (or less) between when he was given the soap and when he was removed from his "cube," he did not finish cleaning his toilet and sink. (Depo. at 10, 35-37.)

[2] New York prison inmates are subject to three levels of disciplinary hearings for violations of prison rules. *Porter v. Coughlin*, 421 F.3d 141, 142 n.1 (2d Cir. 2005) (citing *inter alia* N.Y. COMP. CODES R. & REGS. tit. 7 §§ 270.2 (Standards of Inmate Behavior); 270.3 (Tiers of Disciplinary Hearings), 252.5 (Tier I dispositions); 253.7 (Tier II dispositions) and 254.7 (Tier III dispositions)). An inmate may be subject to up to 30 days confinement in a Special Housing Unit or in his own cell (keeplock) for Tier II violations. *Id.* § 253.7(a)(1)(iii).

3

(DHT), Dkt. No. 41-7 at 1; Depo. at 41).[3] Plaintiff argued that he should not be charged with possessing "contraband" because he was given the soap by an unknown Correctional Officer (not defendant Secore) a few minutes before it was seized. He stated that he did not use up or dispose of the soap because he was taken from his cube to attend the prior disciplinary hearing before he finished cleaning his sink and toilet. (DHT at 2-3, 5). Officer Secore testified that inmates were given cleaning solution only in spray bottles and only on Saturdays. He explicitly denied that he provided the cup of cleaning solution to plaintiff on Monday, December 17, 2007. *Id.* at 4-5. The other correctional officer on duty at the SHU on December 17th, Officer Pulsifer, also testified and denied issuing any supplies that Monday morning. *Id.* at 7-8.

Defendant Guerin found the plaintiff guilty of possessing and "holding on" to contraband and imposed the sanction of 30 days "keeplock,"[4] together with the loss of recreational, commissary, telephone, and package privileges for that same period. The 30-day keeplock was added on to the term plaintiff was serving on other charges that are not the subject of this lawsuit, and was apparently served in the SHU. (DHT at 9-13; Depo. Ex. 4, Dkt. No. 41-6; Depo. at 50). Plaintiff described his time in the SHU as "isolated 24 hours a day" and "quiet." When questioned during his deposition about "the worst thing that happened to you when you were in SHU," plaintiff replied

---

[3] The citations to the transcript of the disciplinary hearing are to the page numbers of the transcript, not the page numbers in the CM-ECF header.

[4] "Keeplock" is a form of disciplinary confinement where the inmate is confined to his own cell for the duration of the disciplinary sanction. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

4

that the correctional officers made fun of him for getting an additional 30 days for possessing soap in his cell. (Depo. at 50). In responding to the defendant's summary judgment motion, which explicitly argued that the sanction of 30 days in segregated housing did not implicate a liberty interest protected by due process, plaintiff described the conditions of his confinement, but never alleged that he was subjected to anything different than the standard conditions for segregated housing in the facility. (Dkt. No. 42 at 3-4).[5]

Brown appealed the guilty finding, claiming, among other things, that Rule "T" at Franklin allowed inmates to request and receive cleaning supplies during the week (*i.e.,* on days other than Saturday). (Depo. Ex. 10, Dkt. No. 41-12; Ex. 9, Dkt. No. 41-11 at 5).[6] A representative of the Superintendent affirmed the disciplinary finding and

---

[5] "Under the 'normal conditions of SHU confinement in New York,' the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited." *Palmer v. Richards*, 364 F.3d 60, 66 (2d Cir. 2004) (citations omitted). In his response to the defendants' summary judgment motion, plaintiff stated that the inmates in the SHU at Franklin "are locked down (24 hours a day). Recreation, is a option, for (1) hour   There is no talking in the Box,  S.H.U. area at all. . . . It will be quiet in the box .S.H.U. area (24) hours a day or there will be consequences for the inmates by the officers. No inmate can never be fed, (food) until the the officers comes around to feed the inmates. No inmate is allowed to move around the .S.H.U. area or go to another inmate cell. The Correctional Officers in the S.H.U. area run"s the hole area they way they see fit, . . .[*sic*.] "  Plaintiff also stated that he reviewed the facility rules of the SHU (*see* Depo. Ex. 9, Dkt. No. 41-11) for five days during his confinement, so was well aware of what the conditions of his confinement were supposed to be. (Dkt. No. 42 at 3-4).

[6] Rule T, part of the "SHU Rules" for Franklin provides that soap solution and other cleaning supplies will be provided for Saturday cell "clean up," or during the week, upon request. Rule T also notes that inmates are subject to misbehavior reports if they do not keep their cells clean at all times. (Depo. Ex. 9, Dkt. No. 41-11 at 5).

sanctions. (Ex. 10, Dkt. No. 41-12).  Plaintiff filed a grievance complaining of the inmate misbehavior report and the disciplinary hearing (a copy of which is apparently not available), but received a written response stating that disciplinary hearings were non-grievable.  (Depo. at 51-58; Ex. 6, Dkt. No. 41-8).

## II.   Summary Judgment

The defendants have moved for summary judgment, arguing that, based on the undisputed facts, (1) even if the misbehavior report filed against the plaintiff was false, he received procedural due process at the disciplinary hearing and thus did not suffer a violation of any constitutional right; and (2) because the sanction imposed on the plaintiff was only 30 days of "keeplock," he was not entitled to due process protection in connection with his disciplinary proceedings.

For the reasons set forth below, we conclude that the penalties imposed upon plaintiff did not present the type of atypical, significant deprivation by which the state might create a liberty interest.  Given that plaintiff is not entitled to due process based on the sanctions imposed, we need not address whether plaintiff's disciplinary hearing afforded him procedural due process.  Accordingly, we recommend that the defendants' summary judgment be granted and that the amended complaint be dismissed.

### A.   Legal Standards for Summary Judgment

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or

inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the nonmovant's claims or (2) identifying those portions of the nonmovant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 323).  The second method requires the movant to identify evidentiary insufficiency, not merely to deny the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*.  Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048,

1052 (S.D.N.Y. 1987) (citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### B. Due Process

In order to begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process,[7] "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). In the context of a summary judgment motion, the *Sandin* court rejected a claim that thirty days in

---

[7] ". . . [T]he prevailing view is that by its regulatory scheme New York State has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor (citations omitted)." *Thompson v. LaClair*, 9:08-CV-037, 2009 WL 2762164 at *4, 2009 U.S. Dist. LEXIS 75277 (N.D.N.Y. Aug. 25, 2009).

8

segregated confinement was "atypical and significant." *Id.* at 486.

*Palmer v. Richards* summarized how the Second Circuit has applied *Sandin* in the years following that seminal decision:

> Our cases "make clear that duration is not the only relevant factor. The conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of 'atypical and severe hardship ....' " *Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir.2003) (*per curiam*). . . . [W]e have explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir.2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir.2000). Instead, our cases establish the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. Where the plaintiff was confined for an intermediate duration-between 101 and 305 days-"development of a detailed record" of the conditions of the confinement relative to ordinary prison conditions is required. *Colon*, 215 F.3d at 232; accord *Sims*, 230 F.3d at 23. . . . Disputes about conditions may not be resolved on summary judgment, *Wright [v. Coughlin],* 132 F.3d [133] at 137-138 [(2d Cir.1998)], but where the conditions are undisputed, the *Sandin* issue should be resolved by the court as a matter of law, *Colon*, 215 F.3d at 230-31; *Sealey [v. Giltner]*, 197 F.3d [578] at 585 [(2d Cir.1999)].
>
> A confinement longer than an intermediate one, and under "normal SHU conditions," . . . is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement) . . . . And although shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest, *see Sealey*, 197 F.3d at 589, we have explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealey* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical, *see Ortiz*, 323 F.3d at 195 & n. 1; *Colon*, 215 F.3d at 232 n. 5, quoted in *Sims*, 230 F.3d at 23; . . . . In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short-less than the 30 days that the *Sandin* plaintiff spent in SHU-and there was no indication that the plaintiff endured unusual SHU conditions. *See, e.g.*, *Hynes v. Squillace*,

> 143 F.3d 653, 658-59 (2d Cir.1998) (*per curiam*) (21 days in keeplock); *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir.1998) (18 days in SHU); *Frazier [v. Coughlin],* 81 F.3d [313,] at 317 [(2d Cir.1996) (*per curiam*)] (12 days in SHU).

*Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004).

In this case, the plaintiff was subjected only to a Tier II hearing, in which the maximum possible confinement he could receive was 30 days of segregated housing or keeplock.  *See* N.Y. COMP. CODES R. & REGS. tit. 7 § 253.7(a)(1)(iii).  Even though plaintiff had a prior disciplinary infraction, for which he was serving an SHU sentence of 30 days, the only period of confinement in question here is the 30 days of segregated housing for which the defendants are responsible.  *See Sealey v. Giltner*, 197 F.3d at 587 (when the plaintiff is sanctioned with multiple periods of segregated housing, the court must focus only on the interval(s) for which the defendant is responsible).

The federal district courts in New York, applying *Sandin*, have been consistent in holding that terms of SHU or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement.  *See, e.g., Rivera v. Goord*, 9:05-CV-1379, 2008 WL 5378372 at *2-*3, 2008 U.S. Dist. LEXIS 103311 (N.D.N.Y. Dec. 22, 2008) (granting summary judgment on the issue that 40 days in room confinement did not constitute a cognizable liberty deprivation under *Sandin*) and cases cited therein; *Thompson v. LaClair*, 2009 WL 2762164  at *5-*6, 2009 U.S. Dist. LEXIS 75277, and cases cited

therein; *Davidson v. Murray*, 371 F. Supp. 2d 361, 369 (W.D.N.Y. 2005) and cases cited therein. *See also Smith v. Taylor*, 149 Fed. Appx. 12, 2005 WL 2019547 at *1 (2d Cir. 2005) (affirming grant of summary judgment dismissing plaintiff's claims of defects in an administrative hearing that resulted in his disciplinary confinement for 45 days in the SHU; plaintiff did not offer evidence that his confinement was more onerous that those generally present in the SHU and thus did not have a protected liberty interest in avoiding the 45-day confinement).

In this case, despite several opportunities to make a record with respect to any atypical or unusual conditions of confinement, the plaintiff has never alleged that he was subjected to anything other than the standard conditions of segregated housing at Franklin. Thus, this court concludes there is no factual support in the record for the position that the 30-day keeplock sanction imposed upon the plaintiff constituted an atypical or significant hardship that would be protected by the Due Process Clause. Accordingly, the Court recommends that the defendants' motion for summary judgment be granted on that basis and the amended complaint be dismissed.

### C.    Procedural Due Process

Defendant Secore argues that, even if the misbehavior report he filed was false, the plaintiff received procedural due process at the disciplinary hearing and thus did not suffer a violation of any constitutional right. A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout*, 808 F.2d

949, 951 (2d Cir. 1986).  Because the sanctions imposed upon plaintiff as a result of the misbehavior report filed by Defendant Secore did not implicate a liberty interest, the allegation of unfounded accusation is not actionable.  *See, e.g., Smith v. Taylor*, 149 Fed. Appx. 12, 2005 WL 2019547 at *1.  Given the court's conclusion that the plaintiff was not entitled to due process protection in connection with his Tier II disciplinary hearing, summary judgment as to both defendants is appropriate even if there were issues of fact regarding whether the plaintiff received procedural due process in connection with the hearing.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgement (Dkt. No. 41) be **GRANTED** and the amended complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: February 12, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge